## INDUSTRIAL COMMISSION v GRODEY

Ohio Appeals, 2nd Dist, Shelby Co

No 84.   Decided Jan 9, 1933

Gilbert Bettman, Attorney General, Columbus, and R. R. Zurmehly, Ass't Attorney General, Columbus, for plaintiff in error.

Orman G. Terry, Columbus, for defendant in error.

HORNBECK, J.

It appears from the evidence that plaintiff prior to the injury of January 13, 1928, had very little vision in the eye, which eventually was removed. There is some dispute in the testimony respecting the extent of vision, but it is evident that it was less than 25 per cent. It is the claim of counsel for defendant Commission that the general purpose of the Workmen's Compensation Act is to compensate employees protected by its provisions for loss of earning capacity; that as it is put in his brief "this man did not have an eye; he had an eyeball in which there was no vision at that time"; that inasmuch as plaintiff lost little or no sight by the enucleation of the eyeball, the injury did not come within the provision of §1465-80 GC covering the loss of an eye.

On the other hand it is asserted by counsel for plaintiff that the injury under consideration and the resultant effect is expressly covered by the language of the statute. The section under consideration, §1465-80, GC, reads as follows, and we will, for the purpose of the opinion, divide it into three paragraphs:

**Sec 1465-80 GC, Paragraph 1.**

"In case of injury resulting in partial disability, the employe shall receive sixty-six and two-thirds per cent. of the impairment of his earning capacity during the continuance thereof, not to exceed a maximum of eighteen dollars and seventy-five cents per week, nor a greater sum in the aggregate than thirty-seven hundred and fifty dollars, and such compensation shall be in addition to the compensation allowed to the claimant for the period of temporary total disability resulting from such injury. In cases included in the following schedule, the disability in each case shall be deemed to continue for the period specified and the compensation so paid for such injury shall be as specified herein, and shall be in addition to the compensation allowed to the claimant for the period of temporary total disability resulting from such injury, to-wit:
"Schedule."

Then follow separate provisions for the loss of a thumb, for the loss of a first, second, third and fourth finger, for the loss of parts of thumb and fingers, for the loss of a hand, the loss of an arm, the loss of a great toe, for the loss of any one of the toes other than the great toe, for the loss of more than two-thirds of any toe, for the loss of a foot, the loss of a leg and then specifically,
Paragraph 2.

"For the loss of an eye, 66 2/3 per cent. of the average weekly wages during one hundred weeks."
3. "For the permanent partial loss of sight of an eye, 66 2/3 per cent. of the average weekly wages for such portion of one hundred weeks as the Commission may, in each case determine, based upon the percentage of vision actually lost as a result of the casualty, but in no case shall an award of compensation be made for less than a 25 per cent. loss of vision."
4. "In case an injury results in serious facial or head disfigurement which impairs the opportunities to secure or retain employment, the Industrial Commission of Ohio may in its discretion, make such award of compensation as it may deem proper and equitable, in view of the nature of the disfigurement and not to exceed the sum of thirty-seven hundred and fifty dollars."

It will be noted that §1465-80 GC covers two classes of cases: first, injuries resulting in partial disability; second, specific cases set up in the "Schedule" following the first paragraph of the section. As to permanent partial disability, there clearly is vested in the Commission the discretionary power of determining, within the limits of the statute, the time during which it is probable

the incapacity will continue. In all those cases listed under the heading "Schedule" the amount of compensation and the term of compensation are arbitrarily fixed. Thus, in this case, if the plaintiff suffered the "loss of an eye" he is entitled to receive 66 2/3 per cent. of his average weekly wages for one hundred weeks.

We are of opinion that plaintiff's injury comes under the express provision of paragraph 2. The injuries contemplated under the heading "Schedule" mean the loss of the member, not the loss of the use of the member. Thus the dismemberment of a stiffened thumb, with little of usefulness of a normal thumb, of a withered hand or of a palsied arm would come within the classification of the loss of a member and be so compensated. So the loss of an eye, in one view at least, in our judgment, is established if the physical member is severed though it be imperfect even to the extent of 75 per cent. or more of loss of vision.

This interpretation is more clearly required when the member itself is lost than upon the total loss of the sight, although we are not called upon to say nor do we say that, either condition might not be compensable under **paragraph 2, §1465-80 GC.**

That part of the section under consideration employs the words "For the loss of an eye * * *." We should say that by common interpretation one whose orbit known as the eye had been removed, had suffered the loss of an eye. Such meaning is strengthened because the language employed in paragraph 2 of the section is used in connection with that which immediately follows in paragraph 3, relating to the permanent partial loss of the **sight** of an eye. Had it been the intent to allow 66 2/3 per cent. of the weekly wage for one hundred weeks only for the total loss of the sight of an eye the Legislature knew apt and appropriate language to characterize its purpose. But it is urged that it is the purpose of the section to award no compensation for less than a 25 per cent. loss of vision, as incorporated in the last part of paragraph 3. This language is a part of that paragraph referring to the permanent partial loss of **sight** only of an eye and is separate and distinct from the paragraph referring to the loss of an eye. In the latter paragraph the Commission has discretionary power. In the former it has none after it be determined that the injury comes under the general provision of the paragraph. Nor do we believe that paragraph 4 covering serious facial or head disfigurement, wherein the determination of the extent of the injury is discretionary with the Commission, covers the instant case.

**Sec 1465-80 GC,** and particularly that part under immediate consideration, has been amended and now reads, "For the loss of the eye." This strengthens the theory that the statute intended to compensate for the loss of a member because the attention of the law-making body having been specifically directed to the paragraph under consideration if it had meant to cover only complete loss of vision it would have said so.

We see no incongruity nor conflict with the spirit and certainly not with the letter of the Workmen's Compensation Act in compensating an employee for the "loss" or removal of an eye in which there is less than 25 per cent. vision. That the removal of a blind eye of a workman had a tendency to incapacitate him for industrial employment, and therefore compensable was held under the English Act of 1906 in Ball v W. Hunt & Sons, Ltd. (1912) A. C. 496.

The judgment of the trial court must, therefore, be affirmed.

ALLREAD, PJ, and KUNKLE, J, concur.